IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| CHRISTINA R., | : |
|     Plaintiff, | : |
| v. | :    Civil No. 23-3491 (KMW) |
| COMMISSIONER OF SOCIAL SECURITY, | :    **OPINION** |
|     Defendant. | : |

**WILLIAMS,** United States District Judge:

**THIS MATTER** comes before the Court upon Plaintiff Christina R.'s Appeal (ECF No. 1) from the final decision of the Commissioner of the Social Security Administration denying Plaintiff's application for Social Security Disability Insurance Benefits ("DIB").[1] For the reasons set forth below, the Commissioner's decision is **AFFIRMED**.

I.    **PROCEDURAL HISTORY**[2]

On February 19, 2021, Plaintiff filed an application seeking DIB, alleging an onset of disability on December 3, 2020. (ECF No. 4, R. at 235, 254). Her application was denied on November 13, 2021, (R. at 139–48), and denied again upon reconsideration on January 18, 2022. (R. at 150–54). Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ").

---

[1] Due to the significant privacy concerns in Social Security cases, any non-governmental party will be identified and referenced solely by first name and last initial in opinions issued in the United States District Court for the District of New Jersey. *See* D.N.J. Standing Order 2021-10.

[2] Because the record is voluminous, the Court sets forth only those facts that are necessary for context and are relevant to the issues upon appeal. The Court cites to the Administrative Record, (ECF No. 4), as "R." The Court follows the page numbers as listed in the Administrative Record, and not those automatically generated by the ECF docketing system. Background facts and medical history are set forth in a separate section below. *See* Part III, *infra*.

1

(R. at 176–78). On June 9, 2022, a hearing was held before ALJ Karen Shelton. (R. at 65–94). On August 3, 2022, ALJ Shelton issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act. (R. at 41–63). Plaintiff appealed the ALJ's decision to the Appeals Council on October 4, 2022. (R. at 333–34). The Appeals Council denied Plaintiff's request for review on May 25, 2023, (R. at 24–29), rendering the ALJ's decision final.

On June 28, 2023, Plaintiff timely appealed the matter to this Court seeking review pursuant to 42 U.S.C. § 405(g). (ECF No. 1). The Commissioner filed the Administrative Record on August 28, 2023. (ECF No. 4). Plaintiff filed a brief stating the basis for her appeal on November 27, 2023. (ECF No. 7, Pl.'s Br.). The Commissioner filed a responsive brief on December 22, 2023. (ECF No. 9, Opp. Br.). Plaintiff filed a reply brief on January 5, 2024. (ECF No. 10, Reply Br.).

## II.   STANDARD OF REVIEW

When reviewing a final decision of an ALJ as to disability benefits, a court must uphold the ALJ's factual decisions if they are supported by "substantial evidence." *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000); 42 U.S.C. §§ 405(g), 1383(c)(3). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Morales v. Apfel*, 225 F.3d 310, 316 (3d Cir. 2000). It is "more than a mere scintilla but may be somewhat less than a preponderance of the evidence." *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005) (quoting *Ginsburg v. Richardson*, 436 F.2d 1146, 1148 (3d Cir. 1971)). Courts may not set aside the Commissioner's decision if it is supported by substantial evidence, even if the Court "would have decided the factual inquiry differently." *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001).

In addition to the "substantial evidence" inquiry, the court must also determine whether the ALJ applied the correct legal standards. *Friedberg v. Schweiker*, 721 F.2d 445, 447 (3d Cir. 1983) (citation omitted). The Court's review of legal issues is plenary. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000) (citing *Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999)).

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Act further states:

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

*Id.* § 423(d)(2)(A).

The Commissioner has promulgated a five-step, sequential analysis for evaluating a claimant's disability, as outlined in 20 C.F.R. § 404.1520(a)(4)(i)–(v). Before the ALJ, "[t]he burden of proof is on the claimant at all steps except step five, where the burden is on the Commissioner of Social Security." *Hess v. Comm'r of Soc. Sec.*, 931 F.3d 198, 201 (3d Cir. 2019) (citation omitted). The analysis proceeds as follows:

> At step one, the ALJ determines whether the claimant is performing "substantial gainful activity[.]" 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If he is, he is not disabled. *Id.* Otherwise, the ALJ moves on to step two.
>
> At step two, the ALJ considers whether the claimant has any "severe medically determinable physical or mental impairment" that meets certain regulatory requirements. *Id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). A "severe impairment" is one that "significantly limits [the claimant's] physical or mental ability to do

3

basic work activities[.]" *Id.* §§ 404.1520(c), 416.920(c). If the claimant lacks such an impairment, he is not disabled. *Id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If he has such an impairment, the ALJ moves on to step three.

At step three, the ALJ decides "whether the claimant's impairments meet or equal the requirements of an impairment listed in the regulations[.]" *Smith*, 631 F.3d at 634. If the claimant's impairments do, he is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If they do not, the ALJ moves on to step four.

At step four, the ALJ assesses the claimant's "residual functional capacity" ("RFC") and whether he can perform his "past relevant work." *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). A claimant's "[RFC] is the most [he] can still do despite [his] limitations." *Id.* §§ 404.1545(a)(1), 416.945(a)(1). If the claimant can perform his past relevant work despite his limitations, he is not disabled. *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If he cannot, the ALJ moves on to step five.

At step five, the ALJ examines whether the claimant "can make an adjustment to other work[,]" considering his "[RFC,] ... age, education, and work experience[.]" *Id.* §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). That examination typically involves "one or more hypothetical questions posed by the ALJ to [a] vocational expert." *Podedworny v. Harris*, 745 F.2d 210, 218 (3d Cir. 1984). If the claimant can make an adjustment to other work, he is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If he cannot, he is disabled.

*Id.* at 201–02.

The plaintiff bears the burden on appeal of showing not merely that the ALJ erred, but that the error was harmful. As the Supreme Court has said regarding judicial review of a governmental agency decision, "the burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009); *see also Rutherford v. Barnhart*, 399 F.3d 546, 553 (3d Cir. 2005) (finding that "a remand is not required here because it would not affect the outcome of the case"). That is, the plaintiff must "explain[ ] . . . how the . . . error to which he points could have made any difference." *Shinseki*, 556 U.S. at 413.

4

### III.  FACTUAL BACKGROUND[3]

Plaintiff Christina R. was born on September 10, 1978, (R. at 56), making her 42 years old at the alleged onset date and 43 at the time of the ALJ's decision. Plaintiff meets the insured status requirements of the Social Security Act through June 30, 2025, meaning that she must establish disability on or before that date to be entitled to benefits. (R. at 46).

#### A.  Plaintiff's Family, Educational, Work, and Medical History

Plaintiff lives with her husband and 17-year-old stepdaughter. (R. at 1174). She and her husband have been married since 2010. (*Id.*). She also has a 21-year-old daughter and two sons, ages 19 and 16, whom she does not see. (R. at 1175). Plaintiff graduated from high school, and she received special education throughout all her schooling because of a "learning disability." (R. at 1174–75). Plaintiff did not otherwise enroll in or attend any type of specialized job training, trade school, vocational school, or college classes. (R. at 293).

Plaintiff last worked in December 2020, when she was employed as a home health aide. (R. at 1174). Plaintiff stopped working at that time because of "pain in my feet and legs, from neuropathy." (*Id.*). She previously worked as a retail worker, waitress, secretary, and customer service worker. (R. at 1175).

Plaintiff has a history of abnormal liver diagnostic imaging, altered bowel habits, gastroesophageal reflux disease ("GERD"), and excessive flatus. (R. at 753). Plaintiff was diagnosed with diabetes in 2008, for which she was given metformin and insulin. (R. at 52). Plaintiff underwent gastric sleeve surgery in 2014, which initially resulted in an 80-pound weight loss. (*Id.*; R. at 1185). Following this initial weight loss, she was taken off diabetes medication until July 2018, when she resumed taking metformin. (R. at 52). Plaintiff had numerous

---

[3] The Court recites only the facts that are necessary to its determination on appeal.

5

emergency-room visits for hyperglycemia between July 2020 and March 2022, including several days of in-patient care in September 2021. (*Id.*).

Plaintiff has experienced lower back pain since 2013, following a motor vehicle accident. (R. at 50). Plaintiff has also experienced hip pain, and 2018 imaging of her pelvis and hips revealed mild-moderate degenerative changes of both hips. (*Id.*). In December 2020, Plaintiff experienced a sprained ankle with a suspected fracture along the fifth metatarsal. (*Id.*). She thereafter wore a CAM boot, crutches, and used a scooter in stores. (*Id.*). In March 2021, Plaintiff reported improved strength after doing home therapy, though with residual ankle swelling, and was wearing a sneaker and ankle brace. (*Id.*). She transitioned out of the brace in April 2021 and noted improved symptoms, though with residual foot pain and swelling. (*Id.*).

A gastroenterologist noted that Plaintiff has experienced "steady weight gain since she had some ankle fractures," *see* (R. at 768, 774, 1264), and has called Plaintiff's need for weight loss "paramount" to correcting her gastrointestinal conditions. (R. at 754). In April 2020, Plaintiff weighed 219 pounds. (R. at 798). On the alleged onset date, Plaintiff weighed 236 pounds, with a body mass index of 38. (R. at 1163, 1169). On March 19, 2022, Plaintiff's examining physician noted a chest X-ray to be suboptimal due to her large body habitus. (R. at 1473).

At Plaintiff's June 2022 hearing before ALJ Shelton, Plaintiff's counsel testified to Plaintiff's obesity, (R. at 71), and Plaintiff testified that her legs and ankles swell up, requiring her to lay down. (R. at 80). She also testified that she could no longer work because she could not sit or stand for long periods of time due to back, hip, and leg pain; because her medications caused drowsiness; and because she had anxiety and depression. (*Id.*).

6

**B.     The ALJ's Decision**

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date, December 3, 2020. (R. at 47).

At step two, the ALJ found that Plaintiff has the following severe impairments: a history of lower limb fracture; spinal disorder; peripheral neuropathy; diabetes mellitus; obesity; migraine headaches; and anxiety disorder and depressive disorder (*Id.*). The ALJ also found that Plaintiff suffers from hypertension and cardiac dysrhythmia but deemed these conditions non-severe because they "appear to be controlled with medications without any significant treatment, symptoms or functional limitations." (*Id.*).

At step three, the ALJ found that Plaintiff "did not suffer an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1." (R. at 47–49). Regarding Plaintiff's physical impairments, specifically, the ALJ found:

> though the claimant has lumbar degenerative disc disease with radicular symptoms of pain and paresthesia, as well as a history of a left lower extremity fracture, she has not required surgical intervention to address her impairments, nor is there evidence that the claimant requires assistive aids . . . nor is unable to use her upper extremities . . . .

(R. at 47).

At step four, the ALJ found that during the relevant period, Plaintiff had the RFC:

> to perform sedentary work as defined in 20 CFR 404.1567(a) except she is able to understand, remember and carry out simple, routine and repetitive tasks; make simple work decisions in a routine work setting with few changes; doing work that is goal-oriented rather than strict quota oriented; and can work for 2 hours before needing a standard 15-minute break.

(R. at 49). Regarding Plaintiff's obesity, the ALJ found that "the claimant is an obese individual and has a history of sleeve gastrectomy surgery (Exhibit 11F). Obesity was continually noted

7

through the record, though there is no reference to any particular symptoms or limitations attributed to the claimant's body habitus (Exhibits 11F, 25F, 33F)." (R. at 52).[4] The ALJ "considered all of the claimant's severe and nonsevere impairments in determining the claimant's residual functional capacity, and appropriate exertional and mental limitations have been included to address the claimant's severe and nonsevere impairments." (R. at 47). The ALJ also considered "the combined effect of [Plaintiff's] migraines, lower extremity impairments, peripheral neuropathy, spinal impairment, obesity and diabetes," and found that the Plaintiff is limited to work at the sedentary exertion level. (R. at 53). The ALJ found that Plaintiff is unable to perform any past relevant work. (R. at 56).

At step five, the ALJ found that there were other jobs existing in significant numbers in the national economy that Plaintiff could perform, considering her RFC, age, education, and work experience. (R. at 56–57). Crediting the testimony of a vocational expert, the ALJ found that Plaintiff would be able to perform the requirements of representative occupations such as document preparer, checker, and electronic inspector. (R. at 57). Accordingly, the ALJ concluded that Plaintiff was not disabled. (*Id.*).

## IV.   DISCUSSION

Plaintiff raises only one challenge on appeal. *See* (Pl.'s Br. 7–10).[5] Plaintiff contends that the ALJ committed harmful error by failing to consider her obesity at step three. As set forth below, we find that Plaintiff's argument does not warrant remand.

---

[4] "Exhibit 11F" corresponds to doctors' reports by Plaintiff's gastroenterologist from January 11, 2019, to February 26, 2021, (R. at 746–787); "Exhibit 31F" corresponds to doctors' reports from Virtua Gastroenterology from June 16, 2019, to March 12, 2022, (R. at 1253–1439); and "Exhibit 33F" corresponds to records from Inspira Medical Center. (R. at 1448–1568).

[5] All citations to specific pages of the parties' briefs use the page numbers listed in the briefs themselves, not those generated automatically by the ECF system.

8

Social Security Ruling ("SSR") 19-2p, the agency's policy interpretation for how an ALJ should evaluate cases involving obesity, directs that an ALJ "will not make general assumptions about the severity or functional effects of obesity combined with another impairment(s)." Soc. Sec. Ruling 19-2p, 2019 WL 2374244, at *4 (S.S.A. May 20, 2019).[6] "Obesity in combination with another impairment(s) may or may not increase the severity or functional limitations of the other impairment. [An ALJ will] evaluate each case based on the information in the case record." *Id.* ALJs are directed to conduct "an individualized assessment of the effect of obesity on a person's functioning when deciding whether the impairment is severe." *Id.* An ALJ is not required to use any "particular language or adhere to a particular format in conducting his [or her] analysis" at step three; rather, the ALJ's analysis merely requires "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 504–05 (3d Cir. 2004).

Plaintiff argues that "despite finding Plaintiff's obesity a severe impairment at Step 2, the ALJ did not give Plaintiff's obesity any consideration at Step 3, either alone or in combination with Plaintiff's other impairments, including her diabetes and back and hip impairments." (Pl.'s Br. 7 (citing R. at 47–49)). Plaintiff alleges that, "because the pain and swelling in Plaintiff's legs is a focal point of her disability case, and obesity exacerbates pain and swelling in the legs due to excess pressure," ALJ Shelton "was obligated under *Diaz* and the Administration's rules to consider Plaintiff's obesity at step 3." (*Id.* at 8 (citing *Diaz v. Comm'r Soc. Sec.*, 577 F.3d 500, 504 (3d Cir. 2009)).

---

[6] Social Security Rulings are binding on all components of the Social Security Administration. 20 C.F.R. § 402.35(b)(1); *see also Henderson v. Soc. Sec. Admin.*, 87 Fed. App'x 248, 251 (3d Cir. 2004).

9

*Diaz* is distinguishable from Plaintiff's case. In *Diaz*, the Third Circuit vacated the district court's affirmance and instructed it to remand to the Commissioner not simply because the ALJ failed to mention plaintiff's obesity at step three, as Plaintiff suggests, *see* (Pl.'s Br. at 7–9), but because the ALJ provided *no analysis whatsoever* "of the cumulative impact of Diaz's obesity and other impairments on her functional capabilities" across the decision. 577 F.3d at 504. The Third Circuit noted that "[w]ere there *any* discussion of the combined effect of Diaz's impairments," such as at step four, vacatur of the district court's decision would have been inappropriate. *Id.* (emphasis in original). Plaintiff also cites *Bryan P. v. Commissioner of Social Security*, Civ. No. 22-05496, 2023 WL 7151223 (D.N.J. Oct. 31, 2023), to demonstrate how *Diaz* was applied by a court in this District. In *Bryan P.*, however, the claimant's obesity was discussed in "wholly conclusory terms" without any citation to the record. *Id.* at *8.

Neither *Diaz* nor *Bryan P.* is analogous to the case before this Court. Here, the ALJ recognized that obesity could cause functional limitations and accounted for Plaintiff's obesity by limiting her to sedentary work as part of her RFC at step four. *See* (R. at 53 (noting "the combined effect of [Plaintiff's] migraines, lower extremity impairments, peripheral neuropathy, spinal impairment, *obesity* and diabetes") (emphasis added)). The ALJ also pointed to documentation of Plaintiff's obesity throughout the record, specifically noting the lack of reference to "any particular symptoms of limitations attributed to" her obesity. (R. at 52 (citing "Exhibits 11F, 25F, and 33F")).[7] Consequently, the Court cannot find that the ALJ's engagement with the record fails to meet the "meaningful review" demanded by *Jones*, *see* 364 F.3d at 504–

---

[7] The portions of the record that the ALJ examined regarding Plaintiff's obesity are among the same portions of the record that Plaintiff claims merit further review on remand. *Compare* (Pl.'s Br 8 (citing (R. at 768, 774, 1264, 1493))) *with* note 4, *supra*. Because the ALJ already considered these portions of the record in rendering her decision, it is unclear how remand would result in a different outcome.

05, or that its review of Plaintiff's obesity was "wholly conclusory." *See Bryan P.*, 2023 WL 7151223, at *8.

Other courts in this District have declined to remand when the ALJ failed to articulate the effects of a claimant's obesity at step three but subsequently did so at step four. *See, e.g., C.S. v. Comm'r Soc. Sec.*, Civ. No. 19-20845, 2021 WL 5195702, at *2 (D.N.J. Nov. 9, 2021) (affirming when ALJ did not reference obesity at step three but analyzed the functional limitations caused by the plaintiff's obesity during the RFC determination at step four, and stating that, "unlike in *Diaz*, the ALJ's decision provides for judicial review because it includes an 'analysis of the cumulative impact of [Plaintiff's] obesity and other impairments on her functional capabilities'" (quoting *Diaz*, 577 F.3d at 504)); *Porter v. Colvin*, Civ. No. 14-4004, 2015 WL 1969086, at *16 (D.N.J. Apr. 30, 2015) ("As long as the ALJ considers the impact of obesity along with the impact of Plaintiff's other impairments, the ALJ has properly considered obesity." (citing *Diaz*, 577 F.3d at 504–05)); *see also Trzeciak v. Colvin*, Civ. No. 15-6333, 2016 WL 4769731, at *5 (D.N.J. Sept. 12, 2016) (holding that, in a case where the ALJ failed to consider anxiety at step three but did so at step four, the ALJ "is not required to repetitively analyze each symptom at each step; the requirement is that the decision be subject to 'meaningful review' by a reviewing court" (quoting *Jones*, 364 F.3d at 505)). Similarly, because the ALJ in Plaintiff's case "considered all of the claimant's severe and nonsevere impairments," including obesity, in determining her RFC and exertional limitations, *see* (R. at 47, 52–53), we find that ALJ Shelton sufficiently developed the record and explained her findings to permit "meaningful review" of her step three determination. *See Jones*, 364 F.3d at 505.

Even assuming the ALJ made an error in failing to explicitly discuss Plaintiff's obesity at step three, Plaintiff does not meet her burden of showing such an error was harmful. Plaintiff

11

must explain *how* the error to which she points would have made any difference. *See Shinseki*, 556 U.S. at 413. She fails to do so here.

As discussed, the ALJ referenced Plaintiff's obesity at numerous points in the record and found no reference to any particular symptom or limitation attributed to Plaintiff's body habitus. (R. at 52). The ALJ also considered the limitations imposed by the combination of her obesity and other "severe and nonsevere impairments" when assessing her RFC and finding that she was limited to sedentary work. (R. at 52–53). Finally, because the portions of the record that Plaintiff claims merit further review mirror the portions of the record that the ALJ already examined, *see* note 7, *supra*, the Court finds that Plaintiff has failed to "explain[ ] . . . how the . . . error to which [she] points could have made any difference." *See Shinseki*, 556 U.S. at 413. Accordingly, the Court declines to remand.

## V.   CONCLUSION

For the foregoing reasons, the final decision of the Commissioner denying Plaintiff's application for DIB is **AFFIRMED**. An Order follows.

Dated: June 28, 2024

KAREN M. WILLIAMS
United States District Judge